IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AURUM ASSET MANAGERS, LLC, as assignee of the reinsurance assets of EVERGREEN NATIONAL INDEMNITY COMPANY, as successor-in-interest to SUMMIT FIDELITY & SURETY COMPANY | : : : : : : | MISCELLANEOUS ACTION |
| v. | : : | |
| BANCO DO ESTADO DO RIO GRANDE DO SUL, as successor-in-interest to COMPANHIA UNIÃO DE SEGUROS GERAIS, and BRADESCO COMPANHIA DE SEGUROS | : : : : : | NO. 08-102 |

MEMORANDUM

McLaughlin, J.                                          October 13, 2010

      This case concerns an arbitration award that was awarded in favor of the petitioner, Aurum Asset Managers, LLC ("Aurum") and against the respondent Banco Do Estado Do Rio Grande Do Sul's ("Banrisul"). The Court confirmed the arbitration award on June 24, 2008. The respondent moves to vacate the confirmation and argues that the Court was without subject matter jurisdiction to confirm the award because Banrisul is entitled to sovereign immunity. For the reasons stated below, the Court will grant the respondent's motion and vacate the confirmation.

I.   Procedural History

On June 9, 2008, the petitioner, a company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Exton, Pennsylvania, filed a petition seeking to enforce an arbitration award entered in its favor and against Banrisul, a state-owned financial institution organized under the laws of the Federal Republic of Brazil with its principal place of business in the Brazilian State of Rio Grande do Sul.  On June 24, 2008, the Honorable Gene E.K. Pratter confirmed the arbitration award without appearance from Banrisul (Docket No. 2).  On June 23, 2009, Banrisul filed a Motion to Vacate Default Judgment and to Stay Enforcement Thereof (Docket No. 3).  Following supplemental briefing and a telephone conference with counsel, on July 16, 2009, the Honorable Thomas M. Golden entered an order staying enforcement of the award pending review of the motion to vacate (Docket No. 12).  On the same day, the petitioner filed a Motion to Amend Judgment (Docket No. 13).  The case was reassigned to the undersigned on August 30, 2010 (Docket No. 23).

II.  Factual Background

This matter concerns contractual relationships among several companies: Aurum, the petitioner and assignee of reinsurance assets of Evergreen National Indemnity Company

("Evergreen"), formerly doing business as Summit Fidelity and Surety Company ("Summit Fidelity"), Bradesco Companhia de Seguros ("Bradesco"), a reinsurance company, Companhia União de Seguros Gerais ("União"), a reinsurance company, and Banrisul, a financial institution. Aurum's Petition to Confirm Arbitration Award and Enter Judgment ("Pet.") ¶¶ 1-5. Aurum is a Pennsylvania corporation; Evergreen, formerly doing business as Summit Fidelity, is an Ohio company; and Bradesco, União, and Banrisul are all domiciled in Brazil.

From 1976 to 1981, União was a member of a reinsurance pool of Brazilian insurance companies: Grupo de Empresas Seguradoras Brasileiras ("GESB") [Brazilian Insurance Companies Group]. Aurum's Response to Motion to Vacate Default Judgment and Stay Enforcement ("Pet'r's Opp'n") at 3. During this period, Summit Fidelity entered into an agreement with the GESB: the Quota Share Retrocession Agreement ("Treaty"). Pet. ¶ 8; Pet'r's Opp'n at 3. This Treaty contained an arbitration agreement. Pet. ¶ 16. Through the GESB, União received payments from Summit Fidelity. Pet. ¶ 10. As a result, União was to remit payments to Summit Fidelity from União's participation in the GESB. Pet. ¶ 11. The GESB stopped remitting payments to Summit Fidelity in 1982. Pet. ¶ 12; Pet'r's Opp'n at 3. Banrisul was not a signatory or party to the Treaty.

Prior to November 1997, Banrisul owned a majority of União's stock. Pet'r's Opp'n at 3; Banrisul's Memorandum of Law in Support of . . . Motion to Vacate Default Judgment ("Resp't's Br.") at 2. On or about November 25, 1997, Banrisul sold all of its shares in União to Bradesco at public auction. Pet'r's Opp'n at 3; Resp't's Br. at 5. As part of the sale, Banrisul remained responsible to Bradesco for União's responsibilities stemming from the GESB. See Agreement of Commitment for the Assumption of Obligations and Other Covenants, Ex. B to Ex. 1 to Docket No. 11, ("Commitment") Art. 4; Contract for the Purchase and Sale of Shares, Ex. B to Ex. 1 to Docket No. 11, ("Sales Agreement") Art. 3. Banrisul and Bradesco further agreed that Brazilian courts and law would govern any disputes between the parties to the sale. Sales Agreement Art. 9; Commitment Art. 6.

In June 2006, Aurum acquired the right to reinsurance receivables from Evergreen, successor-in-interest to Summit Fidelity. Pet. ¶ 15. In an effort to recover the balances owed to Aurum through its acquisition, Aurum submitted a demand for arbitration on January 12, 2007. Pet. ¶ 17. Banrisul did not take part in the arbitration process. Pet. ¶¶ 19-20.

III. Analysis

The Court will consider the respondent's Motion to Vacate Default Judgment as a request for relief under Fed. R.

Civ. P. 60(b)(4).[1] Rule 60(b)(4) allows a court to relieve a party from a final judgment if the judgment is void. A judgment is void "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers, 900 F.2d 608, 612 n.1 (3d Cir. 1990) (quoting 11 Wright and Miller, Federal Practice and Procedure § 2862 198-99). A Rule 60(b) motion is considered "extraordinary relief which should be granted only where extraordinary justifying circumstances are present," Plisco v. Union R.R. Co., 379 F.2d 15, 16 (3d Cir. 1967), because courts recognize an "overriding

---

[1] The respondent's motion is styled as a motion to vacate default judgment. Aurum argues that the Court did not enter a default judgment. Pet'r's Opp'n at 7-9. This is correct; the Court confirmed the arbitration award. Thus, Banrisul's relief is improperly styled. However, Banrisul also requests relief under Fed. R. Civ. P. 60(b)(4). See Resp't's Br. at 6. This is an appropriate challenge of the Court's confirmation of the arbitration award because the Court did not have subject matter jurisdiction to confirm the arbitration award.

In addition, Aurum argues that Banrisul's motion is untimely. The Federal Arbitration Act ("FAA") requires that notice of a motion to vacate an arbitration award must be served upon the adverse party three months after the award is filed or delivered. 9 U.S.C. § 12. By its terms, however, the FAA's three month deadline does not apply here because the underlying arbitration award is not at issue, but rather the Court's jurisdiction over the confirmation. The Court does not address the merits of the underlying arbitration.

5

interest in the finality and repose of judgments . . . ." Mayberry v. Maroney, 558 F.2d 1159, 1164 (3d Cir. 1977). Here, Banrisul contends that the judgment in question is void because the Court lacked subject matter jurisdiction to enter it.

In its petition, Aurum avers that the Court has subject matter jurisdiction over this case based on diversity under 28 U.S.C § 1332. Pet. ¶6. The Court may only exercise jurisdiction over a foreign state under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330 et seq. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989) ("FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court . . . .").

Banrisul is a state-owned bank of a political subdivision of Brazil. Under the FSIA, a foreign state is defined to include an "agency or instrumentality" of a political subdivision. 28 U.S.C. § 1603. An "agency or instrumentality" includes corporations with a majority of shares that are owned by a political subdivision. 28 U.S.C. § 1603(b)(2). In an undisputed affidavit, Banrisul states that it is 99.4% owned by the State of Rio Grande do Sul, which is sufficient under the FSIA to qualify as a foreign state. Affidavit of Claudio Massetti ("Massetti aff.") ¶ 1.

Under the FSIA, foreign states are immune from suit in this country's courts unless one of the exceptions enumerated in

Section 1605 strips the foreign state of its immunity. 28 U.S.C. § 1605. In pertinent part, 28 U.S.C. § 1605(a) provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —
>
> . . .
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. . . .
>
> (6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration. . . .

28 U.S.C. § 1605(a). Aurum argues that Banrisul affirmatively waived its immunity through (1) commercial activity or (2) an agreement to arbitrate. Pet'r's opp'n at 15-18.

### A. Commercial Activity

Aurum argues that sovereign immunity does not apply because Banrisul waived its immunity by engaging in commercial activity under 28 U.S.C. § 1605(a)(2). "Commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d).

7

In Federal Insurance Co. v. Richard I. Rubin & Co., the United States Court of Appeals for the Third Circuit addressed the requirements for the commercial activity exception to the FSIA. Fed. Ins. Co. v. Richard I. Rubin & Co., 12 F.3d 1270 (3d Cir. 1993). In Federal Insurance Co., insurers and other parties brought suit against two Dutch parent corporations, ABP and USA Holding, to recover damages arising out of a fire at One Meridian Plaza, an office building in Philadelphia.

The Court of Appeals adopted a two-part test for determining whether a foreign state's commercial activities are sufficient to deprive it of sovereign immunity.

> Under this test, the initial inquiry is whether there is a sufficient jurisdictional connection or nexus between the commercial activity and the United States. The second inquiry is whether there exists a substantive connection or nexus between the commercial activity and the subject matter of the cause of action.

Fed. Ins. Co., 12 F.3d at 1286. The Court of Appeals applied this test and noted that in order to satisfy the first prong under the first clause of the commercial activity exception, the foreign state must have carried on commercial activity directly in or with a substantial connection to the United States. Here, USA Holding formed a subsidiary and did not have any contact with the United States itself. "In short, the single act of creating two Dutch corporations, which later formed a U.S. partnership to acquire a significant ownership interest in One Meridian Plaza,

was insufficient commercial activity for the district court to conclude it had subject matter jurisdiction over USA Holding." Id. at 1287.

In addition to a jurisdictional connection, a district court must determine whether the cause of action has a "substantive connection to the commercial activities" engaged in by the foreign state, i.e., whether that action is "based upon" the foreign state's commercial activities. Id. at 1288. The Court explained that the term "based upon" requires that the lawsuit involves a claim that "materially results" from the commercial activity in the United States. Id. (citing Saudi Arabia v. Nelson, 507 U.S. 349, 356 (1993)).

Turning to the Dutch parent corporation ABP, the Court reviewed its actions, which consisted of providing an unsecured loan to a U.S. subsidiary. The loan was negotiated and executed in the Netherlands for the purpose of financing the acquisition of a sixty-five percent interest in a Pennsylvania partnership, which owned the One Meridian Plaza building. The Court noted that negotiating a contract with a United States-based partnership is commercial activity under the FSIA. Id. at 1290. The Court, however, concluded that the claims against ABP were primarily tort-based and did not include a breach of contract allegation stemming from the loan transaction. The Court

concluded that there was no substantive nexus to satisfy the "based upon" requirement.  Id. at 1291.

In the instant case, the Court finds that the petitioner's allegations fail both prongs of the two-part test. Banrisul's conduct in this case, which was limited to conducting business in Brazil under the protections of Brazilian law, and entering into a contractual agreement with a Brazilian company to sell its shares of União, does not qualify as activity that creates a sufficient jurisdictional connection or nexus with the United States.  Banrisul was the majority shareholder of União, and thus stood in a similar position as USA Holding did in Federal Insurance Co.  In contrast with União, Banrisul's activity was neither directly in, nor had a substantial connection to, the United States.

Although Banrisul may conduct commercial activity in the United States, Aurum's petition is also not "based upon" such activity as required by Section 1605(a)(2).  Aurum's claims were triggered by União's failure to remit profits, not Banrisul's actions or any actions taken on its behalf.  See Pet. ¶¶ 8-15. Moreover, Banrisul did not elect to answer for União's obligations to third parties when it agreed to reimburse Bradesco for liability incurred as a result of União's participation in the GESB, as discussed below.  See Affidavit of Marcelo Mansur Haddad ("Haddad Aff.") at 7-14; Letter from Calvin J. McNulty,

Bazil McNulty, to Andrew L. Odell, Bryan Cave (Oct. 12, 2004) ("McNulty Ltr.") at 1 (acknowledging that Banrisul is not directly responsible for União's obligations). Instead, Banrisul insulated itself from União's creditors and other obligations. Banrisul has not waived its immunity under Section 1605(a)(2) because Banrisul did not conduct business in the United States or cause a direct effect in the United States pertinent to this case or agree to do so in the future.[2]

### B. Arbitration Agreement

Alternatively, the petitioner argues that this Court may exercise jurisdiction over Banrisul under the Treaty's arbitration agreement pursuant to 28 U.S.C. § 1605(a)(6) (enforcement of arbitration agreements). As previously noted, Banrisul was never a party to any contract with Aurum or any of Aurum's predecessors-in-interest and Banrisul did not agree to arbitrate anything related to this case.

---

[2] Two exceptions recognized by the Court of Appeals to the general rule of recognizing corporate status of government entities are inapplicable here. In Federal Insurance Co., the Court of Appeals noted that "the independent corporate status of government-owned entities should be disregarded (1) where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created; or (2) where to give effect to the separate instrumentalities would work fraud or injustice." Fed. Ins. Co., 12 F.3d at 1287 (internal citations and quotations omitted). As discussed in Part B, no such extensive control or evidence of fraud is in the record before the Court.

Aurum's argument that the Court should bind Banrisul, a non-signatory, to the arbitration clause to which União consented is unconvincing. The United States Court of Appeals for the Third Circuit has recognized "'five theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel.'" Allstate Settlement Corp. v. Rapid Settlements, Ltd., 559 F.3d 164, 170 (3d Cir. 2009) (quoting Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (applying Delaware corporate law)). The petitioner appears to advance a hybrid theory (assumption, agency, and estoppel) and an incorporation by reference theory to bind Banrisul to União's arbitration agreement.

With regard to the hybrid theory, the record reflects that Banrisul's involvement was limited to that of União's former shareholder because Banrisul never exerted control over União. See, e.g., E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 198 (3d Cir. 2001) ("One corporation whose shares are owned by a second corporation does not, by that fact alone, become the agent of the second company.") (quoting Phoenix Canada Oil Co. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988)); TransAmerica Leasing, Inc. v. La Republica de Venez., 200 F.3d 843, 848-851 (D.C. Cir. 2000) (holding that under the FSIA, stock ownership alone is

insufficient to show a subsidiary is an agent of its parent); Amkor Tech., Inc. v. Alcatel Bus. Sys., 278 F. Supp. 2d 519, 521 (E.D. Pa. 2003) (concluding that the party seeking to enforce an arbitration clause against a non-signatory, via estoppel, must demonstrate that the non-signatory received a "direct benefit" from the contract containing the clause) (citations omitted).

The Court is unpersuaded that Banrisul's insistence that União obtain consent prior to entering into agreements with creditors, fifteen years after the GESB and Summit Fidelity ratified the Treaty, is evidence of Banrisul exercising control over União, either in regards to the GESB or day-to-day operations.  It is clear from a review of the Commitment that Banrisul's request was made to facilitate União's impending sale, rather than an attempt to dictate União's business decisions.

Furthermore, Aurum avers that Banrisul assumed União's obligations to arbitrate when it signed the Commitment because the agreement's purpose was "the transfer to Banrisul of the obligations assumed [] by União as a member of the GESB.  Among other things, Banrisul undertakes the obligations already negotiated with the creditors."  Commitment Art. 1.  The Court finds this contention is inconsistent with the other provisions of the Commitment.

The Commitment's general purpose is tailored by the specific terms contained therein, including the reciprocal

obligations clauses.  Commitment Arts. 3, 4.  Reading the obligations of União and Banrisul together, Banrisul's obligations are triggered when União submits claims to Banrisul and União is obligated to obtain consent from Banrisul prior to entering into agreements with creditors.  If Banrisul and União intended for Banrisul to assume União's GESB obligations under Article One, then Aurum would have no claim against União.  Instead, Aurum would be limited to seeking redress from Banrisul.  However, interpreting Article One in that fashion would deprive Article Four of any effect, rendering it null and void.  The Court refuses to draw this conclusion.

The Court finds that Banrisul's interests are not congruent to União's because the petitioner has presented no evidence that demonstrates that Banrisul is liable for, directly benefitted from, or supervised União's participation in the GESB.  For the foregoing reasons, the Court may not exercise jurisdiction to enforce the arbitration agreement against Banrisul under agency, assumption, or estoppel theories.

The petitioner's reliance upon incorporation by reference yields a similar result.  Arbitration provisions are generally enforced through incorporation by reference in cases, unlike this one, where the non-signatory is expressly referenced in the contract containing the arbitration clause or the contract containing the clause is clearly adopted by another document.

See, e.g., FFC P'ship L.P. v. Rosen Capital Partners, LP, No. 08-1691, 2009 WL 3045538, at *9 (W.D. Pa. Sept. 22, 2009); Indus. Window Corp. v. Fed. Ins. Co., 609 F. Supp. 2d 329, 337-38 (S.D.N.Y. 2009). Additionally, the fact that the articles addressing Banrisul's obligations under the Commitment and the Sales Agreement are silent with regard to arbitration or União's general contractual obligations is compelling.

The United States District Court for the Southern District of New York, addressing identical contractual provisions, likewise concluded that the foregoing arguments were without merit. Allstate Ins. Co. v. Banco Do Estado Do Rio Grande Do Sul, No. 04-1550, 2004 U.S. Dist. LEXIS 11397, at *19-20 (S.D.N.Y. June 23, 2004). The Court also finds that although Brazil and the United States are signatories to the Convention of the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. 201, et seq., these provisions are inapplicable to this case because enforcement of an arbitral award is attempted against a party that was under no obligation to participate in the arbitration. See Allstate Ins., 2004 U.S. Dist. LEXIS 11397, at *22-23.

IV. Conclusion

The Court concludes that Banrisul did not waive its immunity against suit and therefore the Court did not have the

15

subject matter jurisdiction necessary to confirm the petitioner's arbitration award and enter judgment against Banrisul.  The award, insofar as it was entered against Banrisul, is void.  The Court, therefore, declines to amend the award in favor of Aurum as requested by the petitioner insofar as it pertains to Banrisul.  The Court does not need to address the other issues raised by the parties.

       An appropriate order follows separately.